**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA ALEXANDRIA DIVISION**

Trish Mack, as next friend of V.M.L., a minor,

*Petitioner*,

v.

Mellissa HARPER, *et al.,*

Respondents.

**Case No: ____________________**

# PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER

## INTRODUCTION

Petitioner V.M.L. ("Petitioner" or "V.M.L.") is a two-year-old U.S. citizen currently held incommunicado in the custody of U.S. Immigration and Customs Enforcement ("ICE"). Her detention, which began at around 8:30am on April 22, 2025, is egregiously outside of ICE's authority and patently unlawful. **Respondents intend to deport V.M.L. at 6:00am tomorrow morning, April 25,** despite the fact that **she is a U.S. citizen** and has a custodian in the United States ready and willing to care for her. Respondents are well aware of these facts and have refused to release her from their custody. Until 6:00pm on April 24, 2025, Respondents had been representing to undersigned that V.M.L. would not be deported imminently.

V.M.L. was taken into custody with her mother at a scheduled check-in for her mother's Intensive Supervision Appearance Program ("ISAP"). V.M.L.'s mother has been faithfully checking in with ISAP as required since she was released from ICE detention in the fall of 2021. At each appointment, she was required to bring her children.[1] On April 22, 2025, V.M.L.'s mother appeared at her check-in with her two daughters at around 8:30am. Since that time, V.M.L.'s father has only received a single phone call during which he has been able to communicate with V.M.L.'s mother for around or less than one minute. V.M.L.'s father's attorney has been denied access to V.M.L., her mother, and her sister. Respondents have refused to provide information about V.M.L.'s whereabouts and have refused to release her to her lawful custodian by mandate.

Respondents' detention of V.M.L. is without any basis in law and violates her fundamental due process rights. She seeks this Court's urgent action and asks the Court to order her immediate release to her custodian Trish Mack, who is ready and waiting to take her home.

[1] V.M.L. has one sister, who is eleven years old. She is a native and citizen of Honduras.

## LEGAL BACKGROUND

Immigration and Customs Enforcement has detention authority over noncitizens and those it has reason to believe are noncitizens. *See* 8 U.S.C. §§ 1225(b) (detention of noncitizens apprehended at the border); 1226(a) (detention of noncitizens pending a decision in their removal proceedings); 1226(c) (detention of certain noncitizens with criminal histories); 1241(a) (detention of noncitizens after the completion of their removal proceedings); 1357(a)(2) (arrest of noncitizens without an administrative warrant). This delegated authority is limited, and does not include the detention of U.S. citizens. *See Lyttle v. United States*, 867 F. Supp. 2d 1256, 1281 (M.D. Ga. 2012) (finding it is "clearly established that an ICE officer d[oes] not have the authority to detain or deport U.S. citizens," citing 8 U.S.C. §§ 1226–28, 1231, 1357(a)-(d)); *see also United States v. Brignoni–Ponce,* 422 U.S. 422, 884 (1975) (stating that the Fourth Amendment "forbids stopping *or detaining* persons for questioning about their citizenship on less than a reasonable suspicion that they may be [noncitizens]" (emphasis added)). Moreover, the Due Process Clause of the Fifth Amendment permits government detention of individuals only where it is ordered in a criminal proceeding with adequate procedural safeguards, where it is authorized by the immigration laws, or in special and non-punitive circumstances where a special justification outweighs an individual's interest in avoiding physical restraint. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

## FACTUAL BACKGROUND

V.M.L. is a United States citizen, born on January 4, 2023, in Baton Rouge, Louisiana. Her mother and father are both named on her birth certificate. *See* ECF No. 1-1 (V.M.L.'s Louisiana birth certificate). On or around April 22, 2025, at around 8:30am, V.M.L.'s mother attended a

scheduled check-in at the New Orleans ISAP office with V.M.L. and her eleven-year old sister.[2] At that appointment, ICE officers apprehended V.M.L.'s mother and the two girls. *See* Pet., ECF No. 1, at ¶ 20.

Roughly an hour after V.M.L.'s mother and the girls went into the ISAP office, V.M.L.'s father, who had brought them to the appointment, received a call from an officer inside the ISAP office. The officer told him that his partner and both of his daughters had all been taken to the immigration office and gave him an address. When he arrived at the address, he saw that it was the ICE Office in New Orleans at 1250 Poydras Street, New Orleans, LA, 70113. All he was told there was that his partner was in ICE custody and that he would hear from her soon. *Id.* at ¶ 21.

Around 7:30pm, almost 12 hours since the disappearance of his family, V.M.L.'s father received a call where he was able to speak to his partner for only about or less than a minute on a monitored call. He also spoke for about or less than a minute with an officer, who told him that they were going to deport his partner and daughters. *Id.* at ¶ 23. He said over the phone that his daughter is a U.S. citizen, and that she has rights and cannot be deported. *Id.* The officer said that V.M.L. would not be deported, but that his partner and other daughter would be. *Id.* When he began to give his partner the phone number for their attorney, he heard the phone be taken away from her and someone terminated the call. *Id.*

That same day, V.M.L.'s father executed a Provisional Custody by Mandate under Louisiana Revised Statute § 9:951, temporarily "delegat[ing] the provisional custody of" his two daughters to his U.S. citizen sister-in-law, who also lives in Baton Rouge, Louisiana. *Id.* at ¶ 24.

---

[2] ISAP required V.M.L.'s mother to bring both of her daughters to her check-ins. *See* Pet., ECF No. 1, at ¶ 20, n. 2.

Communication with ICE has failed to produce V.M.L.'s release from custody. On April 22, 2025, the day V.M.L. was detained, an attorney representing V.M.L.'s father spoke with an ICE officer who refused to set up a legal call with the attorney and V.M.L.'s mother and refused to provide information about V.M.L.'s whereabouts, stating that the family's deportation was certain. *See* Pet. at ¶ 22.

That same evening, at about 9:30pm, the attorney representing V.M.L.'s father sent an email to Respondent Mellissa Harper, expressing concern for V.M.L., and identifying key directives that the family's detention violated. *See* ECF No. 1-2. To the email, the attorney attached V.M.L.'s birth certificate and the first Provisional Custody by Mandate.[3] The attorney called Respondent Harper the next morning and they spoke by phone. Respondent Harper began interrogating the attorney about V.M.L.'s father's immigration status. The attorney declined to answer any questions about V.M.L.'s father, asking about V.M.L.'s location. Respondent Harper refused to honor the attorney's request to release V.M.L. to her custodian, stating that it was not needed because V.M.L. was already with her mother. Respondent Harper later sent an email confirming her refusal to release V.M.L. to her custodian and stating that she would instead require V.M.L.'s father to essentially turn himself in for detention and deportation. *See* ECF No. 1-2. In other words, she was choosing to use V.M.L., a two-year-old U.S. citizen child, as bait for her father. The attorney sent a follow up email shortly thereafter reiterating her questions about the whereabouts of V.M.L. Respondent Harper has not responded to that email. *See* Pet. at ¶ 26.

[3] On April 24, 2025, V.M.L.'s custodian under the original Mandate terminated the mandate for personal reasons. Next Friend Petitioner Trish Mack and V.M.L.'s father executed a new Provisional Custody by Mandate on April 24, 2025. ECF No. 1-3. She is a lawful custodian of V.M.L.

Attempts to communicate with V.M.L. and her mother have been unsuccessful. Despite the urgency of the situation at hand, ICE has offered to facilitate monitored conversation sometime within 24-48 hours of approximately 3:00pm on April 24, 2025.

## LEGAL STANDARD

Under Rule 65(b) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.), a movant is entitled to temporary restraining order by showing: (1) a substantial likelihood of success on the merits of their claims for relief; (2) a substantial threat of in irreparable injury absent the injunction; (3) that the threatened injury outweighs any damage that injunction may cause the opposing party; and (4) that the injunction will not disserve public interest. *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 195 (5th Cir. 2003).

## ARGUMENT

### I. V.M.L. is Likely to Succeed on the Merits.

#### a. V.M.L.'s Detention Has No Basis in Law.

The Immigration and Nationality Act ("INA") explicitly authorizes ICE detention only of noncitizens or people ICE has reason to believe are noncitizens. *See* 8 U.S.C. §§ 1226–28, 1231, 1357(a)-(d); *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1281 (M.D. Ga. 2012) (finding it is "clearly established that an ICE officer d[oes] not have the authority to detain or deport U.S. citizens"). There is no dispute that V.M.L. is a U.S. citizen. Respondents have not instituted removal proceedings or otherwise contested her claim to citizenship. It is hard to imagine a clearer violation of the law than ICE's continuing detention of a two-year-old U.S. citizen and refusal to release her to her lawful custodian.

"No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." 18 U.S.C. § 4001(a). Neither the Immigration and Nationality Act nor

Department of Homeland Security ("DHS") policy authorizes the detention of a U.S. citizen by immigration officers. *See* 8 U.S.C. § 1101 *et seq.*; Memorandum from John Morton, Assistant Sec'y of Homeland Sec. for ICE, "Superseding Guidance on Reporting and Investigating Claims to United States Citizenship," at 1 (Nov. 19, 2009) ("As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a [United States Citizen].").[4] 28 U.S.C. § 2241(c)(3) authorizes the writ of habeas corpus for individuals who are detained in violation of federal law, which includes the INA. V.M.L.'s detention is completely unauthorized by the INA or any other law.

**b. V.M.L.'s Detention Violates the Constitution.**

i. ***V.M.L.'s Arrest and Detention Violates the Fourth Amendment***

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const., amend. IV. Without probable cause, an individual's detention is unlawful. *Id.*; *see, e.g.*, *United States v. Brignoni-Ponce,* 422 U.S. 873, 878 (1975). The Supreme Court has held that a plaintiff who alleged unlawful arrest stated a Fourth Amendment claim "when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention." *Manuel v. City of Joliet, Ill.*, 850 U.S. 357, 368 (2017); *see also Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994) (plaintiff's claims that she was made to go to the police station without probable cause for detaining her were properly considered under Fourth Amendment). Increased immigration enforcement does not diminish the rights of U.S. citizens to be free from unreasonable seizures. *Brignoni-Ponce*, 422 U.S. at 883–84 ("Although we may assume for purposes of this case that the broad congressional power over immigration authorizes Congress to admit [noncitizens] on condition that they will submit to reasonable questioning about their right to be

[4] *Available at* https://revealnews.org/wp-content/uploads/legacy-images/ICEcitizenmemo.pdf.

and remain in the country, this power cannot diminish the Fourth Amendment rights of citizens who may be mistaken for [noncitizens].")

V.M.L.'s warrantless arrest and resultant unlawful detention by ICE violates the Fourth Amendment to the United States Constitution. *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) ("It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause." (internal quotations omitted)).

ICE has and had no probable cause to believe that V.M.L. was in the country unlawfully. Even if it had probable cause at the time of the arrest, which is dubious since she is two years old and ICE is well aware V.M.L.'s mother has been in the country for approximately four years, that probable cause would have evaporated the moment that an attorney representing V.M.L.'s father sent ICE, who acknowledged its receipt, a copy of V.M.L.'s birth certificate showing her birth in Louisiana. Therefore, V.M.L.'s continued seizure by ICE, lacking probable cause, is lawless.

ii. ***V.M.L.'s Detention Violates the Fifth Amendment***

Persons in immigration detention are detained pursuant to civil immigration laws. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Individuals in civil detention who challenge their confinement are protected by the Due Process Clause of the Fifth Amendment. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects." *Zadvydas*, 533 U.S. at 690; *see also Youngberg v. Romeo*, 457 U.S. 307, 315 (1982).

V.M.L.'s detention violates the Fifth Amendment's protection of liberty for at least three related reasons. First, immigration detention must always "bear[] a reasonable relation to the purpose for which the individual was committed." *Demore v. Kim*, 538 U.S. 510, 527 (2003)

(citing *Zadvydas*, 533 U.S. at 690). Here, where the government has no authority to deport V.M.L., detention is not reasonably related to its purpose.

Second, because V.M.L. is not deportable, the Due Process Clause requires that any deprivation of her liberty be narrowly tailored to serve a compelling government interest. *See Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (holding that due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest"). V.M.L.'s ongoing imprisonment obviously cannot satisfy that rigorous standard.

Third, at a bare minimum, "the Due Process Clause includes protection against *unlawful* or arbitrary personal restraint or detention." *Zadvydas*, 533 U.S. at 718 (Kennedy, J., dissenting) (emphasis added). Where federal law explicitly prohibits an individual's detention, their detention also violates the Due Process Clause.

For the foregoing reasons, V.M.L. is likely to succeed on the merits of their claim that her continued detention violates her Fifth Amendment due process right.

## II. The Remaining Factors Weigh Heavily in Favor of Granting a Temporary Restraining Order.

### a. V.M.L. Will Suffer Irreparable Harm Absent A Temporary Restraining Order.

The Fifth Circuit has explained that "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Book People, Inc. v. Wong*, 91 F.4th 318, 340–41 (5th Cir. 2024) (*citing Opulent Life Church v. City of Holly Springs,* 697 F.3d 279, 295 (5th Cir. 2012)).

V.M.L.'s Fourth and Fifth Amendment rights are being violated through a detention that (1) is not rationally related to any immigration purpose, (2) is not the least restrictive mechanism

for accomplishing any legitimate purpose the government could have in imprisoning her, and (3) lacks any statutory authorization. She is therefore suffering irreparable harm. "[I]f [V.M.L.'s] continued detention is indeed unconstitutional, every subsequent day of detention without remedy visits harm anew." *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 711 (D. Md. 2016). The "continued loss of liberty" is also an irreparable harm. *See id.* ("Further, because the harm is loss of liberty, it is quintessentially the kind of harm that cannot be undone or totally remedied through monetary relief.").

**b. The Public Interest and Balance of Equities Weigh Heavily in V.M.L.'s Favor.**

The final two factors generally "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see Kravitz v. U.S. Dep't of Commerce*, 366 F. Supp. 3d 681, 755 (D. Md. 2019). The balance of harms and public interest weigh strongly in favor of granting a temporary restraining order. *See Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 24 (2008). In contrast to the irreparable injury facing V.M.L., a toddler in civil detention, the government will not be injured by an injunction. "The Fifth Circuit has held that injunctions protecting constitutional freedoms are always in the public interest." *Viet Anh Vo v. Gee*, No. CV 16-15639, 2017 WL 1091261, at *6 (E.D. La. Mar. 23, 2017) (citing *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013)). "Conversely, [p]ublic interest is never served by a state's depriving an individual of a constitutional right." *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 531 (S.D. Tex. 2020) (citing *Kite v. Marshall*, 454 F. Supp. 1347, 1351 (S.D. Tex. 1978)).

Because V.M.L's continued detention is unconstitutional and unlawful, both the balance of the equities and the public interest weigh in favor of emergency relief.

**III. The Court Should Not Require V.M.L. to Provide Security Prior to Issuing a Temporary Restraining Order.**

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Fifth Circuit has determined that "the amount of security required pursuant to Rule 65(c) 'is a matter for the discretion of the trial court,'" and that "the court 'may elect to require no security at all.'" *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)). District courts routinely exercise this discretion to require no security in cases brought by indigent and/or incarcerated people. *See, e.g.*, *Cole v. Livingston*, No. 4:14-CV-1698, 2016 U.S. Dist. LEXIS 80345, at *23 (S.D. Tex. June 21, 2016) (state prisoners), *vacated on other grounds*, *Yates v. Collier*, 677 F. App'x 915 (5th Cir. 2017); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 385 n.42 (C.D. Cal. 1982) (detained immigrants). This Court should do the same here.

**CONCLUSION**

For the foregoing reasons, Petitioner respectfully request that this Court grant the motion for a temporary restraining order, requiring Respondents to: (1) pause any transfer or removal of V.M.L., her mother, and her sister during the pendency of this petition before this Court and prohibit any transfer outside this District; (2) order the immediate release of V.M.L. from ICE custody to her custodian Trish Mack during the pendency of this petition; and (3) set a briefing schedule to enable full consideration of the issues raised in this motion and the underlying petition before Respondents may take any further adverse action against the family.

Dated: April 24, 2025 Respectfully submitted,

/s/ Matthew Vogel
Matthew S. Vogel
Gracie H. Willis*
National Immigration Project
of the National Lawyers Guild
1763 Columbia Road NW
Suite 175 # 896645
Washington, DC 20009
Tel: (213) 430-5521
matt@nipnlg.org
gracie@nipnlg.org

**Pro hac vice application forthcoming*

**COUNSEL FOR PETITIONER**