UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| Trish Mack, as next friend of V.M.L., a minor,<br><br>*Petitioner*,<br><br>v.<br><br>Mellissa HARPER, *et al.*,<br><br>Respondents. | Case No: 1:25-cv-550-TAD-JPM |

**PETITIONERS' REPLY IN SUPPORT OF**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**

Last night at approximately 7:59pm, Petitioner V.M.L., through Next Friend Petitioner Trish Mack, filed a petition for habeas corpus, ECF No. 1, and a motion for a temporary restraining order, ECF No. 2, explaining that she is a two-year-old U.S. citizen whom Immigration and Customs Enforcement ("ICE") is detaining and planning to deport. She has been held incommunicado with her mother and eleven-year-old sister since approximately 8:30am Central Time on Tuesday, April 22, 2025.

This morning at approximately 6:23am Central Time, counsel believes that V.M.L. was put onto a plane with her mother and sister. Counsel believes that the plane landed in El Paso at approximately 8:15am Central Time. <u>To counsel's knowledge, V.M.L. is still in the United States, but may soon be deported</u>.

**I.    This Court Has Jurisdiction to Review the Motion for Temporary Restraining Order.**

1

The Fifth Circuit and this Court have held that even if someone is transferred elsewhere, the court retains jurisdiction. *Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change."); *Johnson v. ICE*, No. 1:19-CV-672-P, 2019 U.S. Dist. LEXIS 98206, at *2 (W.D. La. June 5, 2019) (collecting cases).

**II.     ICE's Attempts to Disappear V.M.L. Are Egregious And Contain Flagrant Fallacies and Misrepresentations**

V.M.L. was taken into ICE custody at approximately 8:30am Central Time on Tuesday, April 22, 2025. Since then, Respondents have had numerous opportunities to either (a) release her to a custodian; or (b) facilitate communication between her mother and a parent, custodian, or attorney. They have not only willfully refused to do either of those things, but have deliberately prevented them.

After his daughters' and partner's arrest, on the morning of April 22, V.M.L.'s father went to the New Orleans ICE Field Office. The officers there would not tell him where his family was, and instead gave him a piece of paper saying she was detained and told him that she would call him.

On that same day in the afternoon, an attorney representing V.M.L.'s dad called ICE Officer John Harnett amd asked for contact with V.M.L.'s mother and the children. Officer Harnett could not tell the attorney where they were or facilitate conversation, but did share that it was likely that they were in a hotel.

Around 7:30pm, V.M.L.'s father received a phone call from an unfamiliar number. An ICE officer was on the other end, and told V.M.L's father that he could speak to his partner briefly, but that they were being deported. He believes the phone was on speaker and heard the ICE officer nearby during the approximately one minute he spoke with VM.L.'s mother. During that call,

2

V.M.L.'s father said the V.M.L. is a U.S. citizen and has a right to stay in the United States. The mother agreed with him. The ICE officer said that V.M.L. would not be deported. V.M.L.'s father began to give her mother their immigration attorney's phone number, but he heard the phone moved and disconnected. This is the last time he heard from V.M.L.'s mother or his daughters.

At 9:30pm, the attorney for the father emailed Respondent Field Office Director Mellissa Harper with the family's information, birth certificates, and the properly executed custody by mandate. The attorney requested a legal call.

The next day, April 23, 2025, in the morning, the attorney called Respondent Harper to ask about receipt of the email the night before. Respondent Harper refused to honor the request to release V.M.L. to the custodian. She threatened by implication that V.M.L.'s father would be detained and deported if he came to try to pick her up, which would not serve V.M.L.'s best interest or guard her rights as a U.S. citizen.

At around 10:30am, the attorney for V.M.L.'s father sent Respondent Harper a follow up email again reiterating the need for a legal call. To this date, the attorney has not heard back from FOD Harper.

That same morning, Next Friend Trish Mack learned that V.M.L. had been taken with her mom and sister and began calling ICE NOLA Field Office. The number goes directly to a call center and nobody at the call center was able to connect her with the Field Office. She spoke with up to six people over the course of the day inquiring about the family's whereabouts and in particular checking on their welfare. One person told her they were in a hotel somewhere. She sent an email to the NOLA FIeld Office email inbox at approximately 9:22am and did not receive an individualized response.

On April 24, at about 8:39am, the attorney for the father and undersigned counsel sent a letter to Respondent Harper demanding V.M.L.'s release. The email went unanswered.

At 9:45am, undersigned counsel emailed the Assistant U.S. Attorney in the Eastern District of Louisiana, the last known location of the family, to indicate readiness to file a habeas and hope that it could be resolved without litigation, which could be unnecessary if we were able to speak with V.M.L.'s mother.

Undersigned counsel received a response at 9:58, stating, "I've forwarded your email to our local ICE attorney contacts."

Around 10:00am, V.M.L.'s father called ICE again to ask about where he family was and to try to make contact with them. Someone from ICE told him that they were in Washington, D.C.

At around 10:38am, undersigned counsel received a response from second AUSA, stating, "I'm actively trying to loop in the Office of Immigration Litigation, as well as get an update from ICE."

At around 11:17am, an attorney with the U.S. Department of Justice's Office for Immigration Litigation ("OIL") called the attorney for the father, asking about the facts of the case. The attorney asked for a legal call and for ICE to facilitate a call between V.M.L.'s mother and father. He was not able to agree to that on the call.

At 12:46pm, the Eastern District Assistant U.S. Attorney updated that OIL was taking lead on the case, and at 12:54, undersigned counsel responded, "we would certainly want to be in touch with the right person given the urgency of speaking with the child's mother."

At around 2:00pm, undersigned counsel and counsel for V.M.L.'s father spoke with OIL attorneys Joseph McCarter and Bichngoc T. Do on the phone and learned that the family was in Alexandria, Louisiana. Counsel reiterated the need for an immediate phone call with V.M.L.'s

4

mother. Mr. McCarter stated that ICE was "open to exploring communication" but had "operational concerns." Counsel asked for their authority for holding someone incommunicado without access to counsel and authority for detaining the child, but Mr. McCarter could not provide either. Mr. McCarter stated that Respondents did not feel the father's "parentage" was sufficiently proven. Counsel pointed to the birth certificate and notarized mandate, which required the father's identity documents, both children's birth certificates, and Next Friend Ms. Mack's ID. Mr. McCarter said this was not sufficient but was not at that time able to say what else would be sufficient. Mr. McCarter did not have a timeline for getting a call set up, or even deciding if they would allow one. Undersigned counsel stated that we would be filing the habeas imminently.

At 3:06pm, undersigned counsel received an email from OIL attorney Ms. Do stating, (1) ICE would facilitate a legal call, but it would be in the next 24-48 hours. (2) ICE would not honor the mandate unless V.M.L.'s father showed up in-person with certain documentation. Counsel acted on reliance that a deportation was not planned for 24-48 hours.

At 4:03pm, the attorney for V.M.L.'s father responded to that email with her phone number and other information to facilitate the call. She asked about the ability for V.M.L.'s mother to sign documents to formally establish representation and address immigration options.

At 6:09pm, after the Western District Court had closed for the day, Attorneys McCarter and Do spoke with undersigned counsel, stating that despite earlier assurances of a legal call in 24-48 hours, ICE was deporting V.M.L. in the morning at 6:00am, before the courts would re-open. Undersigned counsel has been in email communication with OIL Attorneys McCarter and Do since that time.

Undersigned counsel filed the petition and emergency TRO as quickly as was practicable, at approximately 8:00pm. Counsel attempted to call the court, but none of the court's public

numbers were answered. In attempting to find a way to have the emergency filing heard overnight, several supporters of the family reached out to the court informally. No details of the case were shared to undersigned counsel's knowledge.

At around 3:45am on April 25, 2025, Respondents attempted to enter an appearance and file an opposition brief.[1] The brief contained what is purported to be a handwritten letter by V.M.L.'s mother, but does not have any indicia of the formalities of a sworn statement or reliability. To counsel's knowledge, V.M.L.'s mother is in ICE custody and it is not clear what was the context of this writing. It is also not clear why ICE would not merely facilitate a call between V.M.L.'s mother and either father or custodian to allow those charged with her care the opportunity to discuss her wellbeing and best interest.

This appears to be an effort to secretly disappear this family without review of this court. It seems likely that ICE made the offer of a call at around 3:00pm to discourage the filing of the petition during business hours. The email with the offer came in about an hour after a phone call where V.M.L.'s counsel said that ICE was not acting with sufficient urgency and so would be filing the petition imminently. The offer of a phone call with the associated implied assurance that the family would be in the US for 24-48 more hours appears to have been a ruse. Then, at just after 6pm CT, after the court was closed for the day, Respondents' counsel called Petitioner's counsel and just as abruptly retracted the offer, conveying that Petitioner and her mother would be deported in the morning before court was open for the day. Never did Respondents share the mother's letter,

---

[1] Respondents' brief is not currently docketed because Respondents' counsel is awaiting filing privileges. It was faxed to the clerk's office early around 3:45am. It is attached as Exhibit 1 to this filing. Counsel received notice from OIL when prepared to file that the filing was not accepted and that they will be re-filing electronically. Given the urgency of the situation that Petitioner is believed to be on a plane in El Paso, TX, Petitioner is filing preemptively.

purportedly signed around 6:23pm - the first time undersigned counsel saw it was in their opposition filing.

Respondents have not explained why they have been unwilling, for three calendar days, to allow a father or a custodian to make plans for a U.S. citizen who Respondents are detaining or have a meaningful unmonitored phone call to discuss her best interest. At least four people: the father's immigration attorney, undersigned counsel, the father, and the custodian, were available to speak by phone with V.M.L.'s mother and repeated requests for a phone call were made.

In addition, Respondents' filing is misleading at times and simply untrue at others. First, Trish Mack has at all times been willing to provide her ID and come pick up V.M.L., and to discuss with V.M.L.'s mother what is in the best interest of V.M.L., but Respondents thwarted and prevented her from doing so. Respondents said during yesterday's call with counsel that the father was the only one who could pick up the child and establish his identity. Respondents never actually extended that offer or opportunity to V.M.L.'s custodian Ms. Mack.

Second, Respondents' filing states that VML's mother has made known that she does not want VML released from custody. That is emphatically NOT what the note says. The note states factually that V.M.L.'s mother "is bringing" V.M.L. with her. This is not a statement of intent, hope, desire, or assessment of what is best of V.M.L. At minimum, V.M.L. deserves for there to be a conversation between her caregivers to ensure that they agree on what is best for her.

The Court should grant the TRO in order to maintain the status quo, so that it may fully adjudicate this Petition.

Dated April 25, 2025

Respectfully submitted,

/s/ Matthew Vogel
Matthew S. Vogel
Gracie H. Willis*
National Immigration Project

of the National Lawyers Guild
1763 Columbia Road NW
Suite 175 # 896645
Washington, DC 20009
Tel: (213) 430-5521
matt@nipnlg.org
gracie@nipnlg.org

*Pro hac vice application forthcoming*

**COUNSEL FOR PETITIONER**